WILLIAM G. SANDS, Receiver, etc., of the Ætna Insurance Company, Appellant, *v.* SMITH SHOEMAKER, Respondent.

The action was upon a premium note given for an insurance policy, and involves the same principles as *Sands* v. *Sanders* (26 N. Y., 239).

The facts alleged and relied upon to make this case different from that one and hence not determined by the judgment therein, are: "First, that defendant's note and policy are not proved by competent evidence to be in the hazardous department."

*Held*, that, as in the court below the plaintiff was nonsuited upon other grounds of objection by defendant, in which the fact now controverted was admitted or assumed by defendant, it was too·late to raise that question now.

The defendant should have made the absence of proof upon this point a specific ground of objection in the court below, and thus have enabled the plaintiff with leave of the court to supply the defect. (DAVIS, J.)

"Second, that no losses accrued during the existence of his policy sufficient to require an assessment to the full amount of his note."

*Held*, that the report of a referee in an action against the said insurance company, setting forth claims established before him to an amount which with per centage to be allowed for collection would exceed the total assets of the company if all were available, which report was produced and read on the trial of this cause without objection, was competent evidence, and sufficient to authorize the receiver to make the assessment and to assess the full amount of the premium notes. (*Id.*)

As to the time when such losses accrued, the dates given in the referee's report of losses are sufficient to make a *prima facie* case on this point. (*Id.*)

THIS is an action brought by the receiver of the Ætna Insurance company, of Utica, to recover of the defendant the amount of a premium note of $325, dated January 6, 1853. This note was given in consideration of an insurance policy of $1,000, for three years from the date of the note, on which day the policy was issued. On the 16th day of January, 1854, an order was made by the Supreme Court restraining the said company from further exercising its corporate rights, and which order declared that a receiver be appointed, etc., and that a reference be had to appoint such receiver, etc.

On this proceeding, Edward Eames was appointed receiver, and on the 24th of January, 1854, he filed his bond, and on the next day his oath of office. On the 19th of February, 1855, the said Edward Eames, on his own petition presented to the court for that purpose, was ordered to proceed and assess the premium notes held by him as such receiver, and liable to contribute to the payment of losses mentioned and contained in schedule A, attached to said petition, and that he assess said notes to the full amount for which they are liable to contribute to the payment of said losses and the expense of their collection.

Under this order Eames made an assessment. This assessment seems to have been to cover losses in the hazardous department from the 6th of January, 1853, to the 6th of January, 1856. This assessment was confirmed by an order of the court of the date of the 21st of March.

Notice of this assessment was published in two papers printed in the county of Oneida.

In June, 1856, Eames, on his own petition, was removed from the office of receiver, and the plaintiff in this suit was appointed in his place.

In the judgment of June 3d, 1860, dissolving this company, the plaintiff was confirmed as receiver, and he was ordered to collect the original capital stock notes of said company, and he was authorized to make such assessments upon the deposit notes as the said receiver should deem necessary for the payment of losses by fire, and other expenses, etc. The said plaintiff under this authority made a general assessment of all the notes to their full amount. This assessment was made on the 23d day of June, 1860. This assessment was duly published as was required by the by-laws of the company. This assessment was confirmed by an order of the court of the date of the 26th of June, 1860. This assessment shows nothing but a general order of the receiver, assessing all the deposit notes to their full amount.

The action was tried at the Chenango Circuit in September, 1861, when the defendant moved for a nonsuit on the following grounds:

1. That the receiver, Eames, was not legally discharged from his trust, and no new receiver could be appointed until he was so discharged, and the plaintiff's appointment was therefore illegal and void.

2. The assessment made by the receiver Eames was irregular and void on the following grounds: The whole $100,000 of the original notes were not assessed, or collected, or otherwise accounted for. It must appear affirmatively that every note included in said assessment, was given in the extra hazardous department, and that all the losses for which said assessment was made were upon policies, which were also in the extra hazardous department; which facts do not appear. It must also appear that there are no other notes in the extra hazardous department than those included in the assessment. This does not appear, but it appears affirmatively that there are other notes in that department not so assessed. The assessment is irregular and void in assuming twenty per cent for the expenses of the assessment. No action can be sustained upon it, it not having been published as required by law. It is irregular and void in that it assesses the defendant too much upon his note, considering the length of his policy, and the amount of his note, and that other notes are assessed for a less amount than they should be. It is irregular and uncertain, and made upon no correct legal principles in the various particulars pointed out to the court on the argument of the motion for nonsuit.

3. That the assessment of the receiver Sands is void as to the defendant, for the reason that the affidavit on which it is based shows no loss which is necessarily or by law a loss for which the defendant's note is liable to contribute. That there is no proof any where of such losses. That the assessment is general, assessing all the notes, in all classes, and of all dates to their full amount, which is not warranted by law.

4. That there is no legal proof of the occurrence of any losses, for which any assessment by either receiver could be made, or for which the defendant's note is liable to contribute.

5. That it appears that all of the losses for which both assessments were made, except about $8,000, occurred upon policies for which the insured gave no premium note or other security for the payment of their proportion of the losses of the company, and for those losses, except $8,000, the defendant's note is not liable to contribute.

6. That the right of recovery against the said defendant is barred by the statute of limitations.

The motion for a nonsuit was granted, and the plaintiff's counsel excepted.

The plaintiff moved for a new trial on exceptions; and, judgment having been suspended, the motion was heard in the first instance at the General Term of the sixth district, where the motion was denied and judgment ordered for defendant. From the judgment entered on such order the plaintiff appeals to this court.

*Henry R. Mygatt*, for the appellant.

*Ward Hunt*, for the respondent.

DAVIS, J. In *Sands* v. *Sanders* (26 N. Y., 239), the question of the validity of the assessments made by the receivers of the Ætna Insurance company of Utica, was presented to, and passed upon, by this court. Upon the question whether an action could be sustained on the basis of the assessment made by receiver Eames, the court were equally divided; four of the judges being of opinion that the want of publication of notice of such assessment, in three newspapers of Oneida county, pursuant to the by-laws of the company, was fatal to a recovery. Upon this point, I concur in the views of EMOTT, J. (26 N. Y., pp. 247, 249, 250), to the effect that publication in the form prescribed by the by-laws was requisite, and that the defect in the publication was not aided by proof of a personal demand of payment of the note. The reasons assigned by him for these views are satisfactory to my mind, and will gain no strength by repetition.

But the court were united in the opinion that the assessment made by receiver Sands was, upon the facts found in

that case, a valid one, and entitled the receiver to maintain his action; and for that reason the judgment was reversed and a new trial ordered.

That decision is conclusive of this case unless the facts are so essentially different that it is not applicable.

The chief differences claimed to exist are: First, that defendant's note and policy are not proved by competent evidence to be in the hazardous department; and, second, that there is no evidence that losses accrued during the existence of his policy, sufficient to require an assessment to the full amount of his note. In *Sands* v. *Sanders* it was found by the referee, as a fact in the case, that the note sued upon was in that department. Such a finding is, of course, wanting in this case, for the reason that the court nonsuited the plaintiff upon his evidence, and no facts are found. It is manifest that the fact was one easily susceptible of proof, and a reference to the grounds on which the motion for nonsuit was based shows that it was assumed by all parties to be true. This is an abundant answer to the objection in the present stage of the case. If the defendant had designed to rely on the absence of proof that his note was in the hazardous department, he should have made a distinct point on that ground, and thus have enabled the plaintiff, with permission of the court, to have supplied the defect. Not having done so, but, on the contrary, having based some of the grounds of his motion on the assumption that his note was in that department, he is too late to make any question on that subject now.

As to the second alleged difference, it seems to me that competent proof was given to establish that claims for losses existed against the company, and which had been established as against the receiver, sufficient to absorb the entire assets in the hands of plaintiff. Proof was given, that, in an action pending in the Supreme Court, wherein Hubbard & Terry were plaintiffs, and Eames, as receiver, and the company, were defendants, an order had been made by the Supreme Court referring it to Joseph Benedict, Esq., in substance, to take, state and report to the court, with the proofs therein,

an account of all the funds, property and effects of the company, and to take proof of and report the amount of debts due and owing by said company, or which are charges upon the assets of said company, with a statement of the consideration and cause of such debt, when contracted, and to whom payable; which order directed and provided that due notice, by publication, should be given by the referee to the creditors of said company, to come in and prove their demands before him, at a time and place to be appointed, and that all creditors coming in and establishing these claims should be deemed parties to the action, and entitled to be heard upon all questions upon which he may be interested, in the same manner as if a party to the record, and brought into court upon process.

The referee's report, under this order, was produced and read without objection, from which it appeared, in substance, that the claims and losses against the company established before him, were about $137,000, and other claims seem to have been established to the amount of about $7,000.

In my opinion, the proceedings in the action of *Hubbard & Terry* v. *Eames*, sufficiently established the validity of the claims as against the company and the receiver, and it was not incumbent on the latter to go into evidence to show, in this action, that those claims were well founded.   The aggregate of all the assets of the company, at their nominal value, did not greatly exceed the claims proved to exist, and, with the percentage allowed for collection, etc., were insufficient if fully available to pay the entire indebtedness.   I think this evidence was not only competent, but that it proved a case requiring the receiver to proceed and make an assessment for the payment of the debts, and to assess the total amount of any note chargeable, to its entire amount for liabilities which justly attached during the existence of the policy accompanying such note.   It does not, that I am able to see, distinctly appear that the losses for which the defendant's note was assessed, all accrued within the period during which his policy was running.   But the dates given in the referee's report of the losses, proved before him in the action

above referred to, are sufficient to make a *prima facie* case on this point. They showed that the losses which accrued within the three years' life-time of the policy, and those adjusted and allowed, or established by judgment within that period, were so large that the receiver, under the authority given him by the court, was justified in declaring that such debts, with the expenses of collection, required him to call in the whole amount of the defendant's premium note. The point is by no means a clear one, but I think the fair presumption is, from all the evidence given, that the receiver, as an officer of the court, was called upon and authorized, in the discharge of his duty, to make an assessment to the whole amount of the note.

It follows, therefore, from the principles settled in *Sands* v. *Sanders* (*ubi supra*), that the judgment below should be reversed, and a new trial ordered, with costs to abide the event.

Denio, Ch. J. The plaintiff seeks to recover the amount of a premium note given to the Ætna Insurance company, of which he is the receiver. The note had been twice assessed for losses—the first time by Edward Eames, the first receiver of the company, and afterward by the plaintiff, who had been appointed his successor on his resignation.

The principal questions now involved came before this court in the case of *Sands* (the present plaintiff) against *Sanders* (26 N. Y., 239). One of these questions regards the assessment made by Mr. Eames. Notice of it was published pursuant to the by-laws, except that it was inserted in only two newspapers, the by-law requiring it to be published " in three newspapers printed in Oneida county, three weeks successively," the last publication to be not less than thirty days prior to the time fixed for payment. An act of 1854 (ch. 369, § 13) authorizes the directors of mutual insurance companies to adjust the claims for losses, and " to settle and determine the sums to be paid to the several members thereof as their respective portions of such losses, and to publish the same in such manner as they shall see fit, or as the by-laws

shall have prescribed." The sense of this paragraph, I think, is, that, in the absence of by-laws, the publication is to be made according to the discretion of the directors, and that, where by-laws exist, their prescriptions should be followed. I concur in what was said on that subject by Judge Emott, in *Sands* v. *Sanders.* The point was not decided in that case, the judges being equally divided upon it.

Upon the questions arising upon the assessment made by plaintiff, I do not doubt that where the charter of one of these companies authorizes the division of the risks into classes, and where such a division is actually made, the notes of any particular class are applicable only to the losses upon policies in that class, and cannot be diverted to the payment of losses in another class, nor can losses in another class be paid out of the proceeds of notes taken in the particular class. It is the same thing, as regards the application of that portion of the assets, as though the policies in that class constituted the only business of the company.

I am of opinion, moreover, that there was *prima facie* evidence, as in the present case, that the policy issued to the defendant was in a class called "special," or "special department," which was different from the classes denominated "farmers and merchants'," and was more hazardous, and was sometimes called the hazardous class. The word "special" has reference, I conceive, to the class of special hazards, as set down in the schedules annexed to the policies generally used by insurance companies. In the case of *Sanders*, the fact was found that the policy for which the defendant's note was given, was in the class called hazardous; and the opinion of the Supreme Court assumes that this note was in the same class. The present case did not reach the stage where a finding became necessary, but there was evidence tending very strongly to show that the present defendant's note was in the class mentioned. So far as it was material to the decision, the question should have been submitted to the jury.

Assuming, then, that there was no evidence suitable to be considered for assigning the defendant's note to that class, I

think the remaining questions in the case are covered by the judgment in *Sands* v. *Sanders;* and I refer to the opinions of the judges in that case for the reasons on which I place my opinion for reversal. I concur in those opinions, except in so far as I have expressed a different conclusion.

The nonsuit should be set aside, and a new trial ordered. All concur.

Judgment accordingly.